Filed 11/27/23  P. v. Burnette CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEFFERY BURNETTE,<br><br>Defendant and Appellant. | C095825<br><br>(Super. Ct. No. SCCR-CRF-2020-758-1) |

Charged with several offenses, defendant Jeffery Burnette petitioned the trial court for mental health diversion pursuant to Penal Code section 1001.36.[1]  At the hearing on

---

[1]     Undesignated section references are to the Penal Code.

Section 1001.36 has been amended since defendant's mental health diversion hearing.  (Stats. 2022, ch. 47, § 38 & ch. 735, § 1.)  The parties do not address the effect of this amendment, nor do we address it, because we conclude the amended language is not determinative of the issues raised in this appeal.  We cite throughout to the version of section 1001.36 in effect at the time of the hearing.  (See Stats. 2019, ch. 497, § 203.)

defendant's petition, both expert witnesses testified that defendant suffered from a number of qualifying mental disorders, including schizophrenia and alcoholism. The trial court found defendant's schizophrenia was not a significant factor in the commission of the charged offenses and denied the petition.

The trial court also noted that other mental disorders appeared to be involved but declined to consider them at the hearing. Rather than seeking a ruling at the hearing as to whether defendant was eligible for diversion based on his alcoholism, defense counsel indicated she would file another petition to request diversion on that ground. Four months later, defendant pleaded no contest to two of the charged offenses and was sentenced to six years in state prison. Defense counsel never filed a second diversion petition based on defendant's alcoholism.

Defendant contends: (1) the trial court's denial of mental health diversion based on defendant's alcoholism was unsupported by substantial evidence, and (2) alternatively, defense counsel performed ineffectively by failing to seek a ruling as to that specific mental disorder.

We conclude defense counsel performed ineffectively by not seeking a ruling on mental health diversion based on defendant's alcoholism. The only apparent tactical reason for not doing so was defense counsel's declared intent to file a later petition focused on that mental disorder. But we see no tactical reason for failing to file that second petition during the four months between the hearing and defendant's plea. We also conclude there is a reasonable probability the trial court would have found defendant suitable for diversion had counsel sought a ruling based on his alcoholism. Accordingly, we will conditionally reverse the judgment to give defendant the option to withdraw his plea and seek mental health diversion for alcoholism.

BACKGROUND

### A.  *Incident and Arrest*

During his mental health diversion assessment, defendant explained that in July 2020, he fled a COVID-19 surge in southern California and traveled north to Siskiyou County.  After arriving, defendant was living in a park and drinking alcohol for two or three days prior to the incident because he did not know anyone in his new location and his phone was not working.  Defendant reported drinking four tall cans of high-alcohol beer and one pint of whiskey on the day of the incident, July 7, 2020.  According to the police report, which served as the stipulated factual basis for defendant's plea, defendant was muttering to himself in a park and got into a confrontation with a young man.  Defendant tried to tackle the young man, who slammed defendant to the ground.

A short time later, defendant was muttering to himself outside a grocery store and began using racial slurs towards a man walking out of the store.  When the man confronted defendant, defendant pulled out a knife and began making stabbing motions from approximately three feet away while saying he was going to stab the man.  A bystander defused the situation, and defendant walked off.  When the police arrested defendant, he was holding an open container of beer, had red watery eyes, was stumbling and unsteady on his feet, and smelled strongly of alcohol.

### B.  *Incarceration and Mental Health Evaluation*

In jail the following day, defendant reported feeling suicidal and sick from alcohol withdrawal.  Defendant saw a psychiatrist, Dr. William Lofthouse, the next day and reported that he feared being attacked and still felt "kind of suicidal."  Dr. Lofthouse diagnosed defendant with panic disorder, general anxiety disorder, depressive disorder, and alcoholism.  After hearing defendant had suffered delirium tremens in the past and had a family history of alcoholism, Dr. Lofthouse noted:  "Suspect a serious alcohol disorder."  Defendant continued to report fear of being around other inmates and feeling suicidal, so jail staff employed special safety protocols for defendant for four more days.

Even after defendant was removed from the safety protocols, behavioral health staff reported that he had made a low severity plan to hang himself.

At the initial visit, Dr. Lofthouse prescribed three medications: Zoloft, Remeron, and Clonazepam. Four days later, however, behavioral health staff at the jail reported that they had given defendant Zoloft and Lorazepam. Defendant's case was initially set for trial to begin on September 28, 2020, but was continued nine times due to complications caused by the COVID-19 pandemic and once due to difficulty serving a subpoena on a witness.

During this time, the county behavioral health team monitored defendant, and Dr. Lofthouse met with defendant approximately once a month. On November 11, 2020, defendant was written up for "mutual combat" with another inmate, which was sparked by a verbal altercation. The other inmate was part of a therapy group at the jail. On December 5, 2020, defendant was written up for speaking disrespectfully to jail staff. On December 17, 2020, defendant was written up for shredding his shirt by using it to clean up water when a toilet overflowed. On January 7, 2021, defendant was written up after he criticized another inmate for stealing candy bars from a third inmate, which eventually resulted in a brief scuffle. On January 20, 2021, defendant was again written up for fighting after a verbal altercation. On March 21, 2021, defendant was written up for possessing a piece of a broken razor. Once defendant became more engaged in therapeutic counseling in the spring of 2021, there were no further incidents resulting in discipline at the jail.

On May 7, 2021, William Thompson, a therapist who works for Siskiyou County Behavioral Health, performed a mental health diversion assessment of defendant. In this assessment, Thompson diagnosed defendant with schizophrenia. Thompson concluded defendant was not eligible for diversion because his schizophrenia did not impair his functioning and was not a factor in his commission of the charged offenses. Thompson

4

concluded instead that the offenses defendant had been charged with were directly related to alcohol intoxication.

In June 2021, defendant's counsel determined, based on evolving case law, that defendant was a suitable candidate for mental health diversion and filed the petition at issue in this appeal.

### C.    *Mental Health Diversion Hearing*

Both Thompson and Dr. Lofthouse testified at the hearing on defendant's petition for mental health diversion held on September 23, 2021. Thompson testified that after he performed the initial assessment, he began meeting with defendant for therapy on an ongoing basis, approximately 10 times in five months. Through those sessions, Thompson concluded that defendant's schizophrenia and anxiety also had a significant effect on his commission of the charged offenses because he was suffering fear and anxiety caused by those disorders and relapsed into alcoholism to reduce those symptoms. Thompson believed treatment would resolve the symptoms that led to the actions for which defendant had been charged. Defendant had already responded well once he became more involved in therapeutic counseling, "monitoring and maintaining himself in a much more appropriate way," which had prevented any further disciplinary incidents in the jail. Thompson emphasized the need for substance use treatment evaluation and for defendant to avoid alcohol. Thompson also testified that defendant had consented to mental health treatment and agreed to comply with treatment.

On cross-examination, the prosecution questioned Thompson extensively about defendant's history of alcoholism. Defendant reported that he began drinking at age 14 and had suffered delirium tremens in the past, a very serious medical condition caused by alcohol withdrawal. In response to the prosecution's questioning, Thompson reaffirmed his belief that defendant's history of alcoholism and his alcohol use prior to the incident substantially contributed to the commission of the charged offenses.

5

The second expert, Dr. Lofthouse, diagnosed defendant with panic disorder, general anxiety disorder, depressive disorder, and alcoholism, all disorders identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). Dr. Lofthouse did not diagnose defendant with schizophrenia but noted that many people keep the symptoms private. Dr. Lofthouse concurred that defendant would benefit from the mental health diversion program. He also recommended a "strong focus on an alcohol disorder" because "[i]f you don't have control of your alcohol disorder no matter what your other psychiatric medications whether it's schizophrenia or major depression it will undercut it, it will make it ineffective." Dr. Lofthouse noted that psychosis and hallucinations could be caused by alcohol, which was one reason he was hesitant to diagnose defendant with schizophrenia. He added, "I am really very concerned about his alcohol abuse." As part of defendant's mental health treatment, Dr. Lofthouse recommended "medical assistive treatment for alcoholism."

On cross-examination, the prosecution confirmed with Dr. Lofthouse that "alcoholism is one of the primary issues for [defendant]" and "caused a psychotic episode" that resulted in the incident for which defendant was charged.

At the close of testimony, defense counsel argued defendant's diagnosed mental disorders, "including alcoholism, including schizophrenia, including depression, including anxiety," made defendant eligible for diversion. She also argued defendant was suitable for diversion because the experts indicated his disorders were treatable in the community and "[t]he People have not put on any evidence that [defendant] is likely to cause or participate in super strike behavior which is the level of dangerousness that the statute requests the Court to consider."

The prosecution responded that: (1) the schizophrenia diagnosis was "questionable" because Dr. Lofthouse never made that diagnosis ; (2) the Siskiyou County mental health diversion program could not address defendant's needs, contrary to the experts' testimony; and (3) the charged offenses were caused by alcohol use, not

6

schizophrenia.  The prosecution emphasized the experts' testimony about defendant's alcohol use and claimed that alcoholism did not qualify for mental health diversion.

The trial court found that defendant had been diagnosed with schizophrenia, which was a qualifying mental disorder under the diversion statute.  But the trial court found that no specific evidence tied defendant's schizophrenia to the charged offenses.  While explaining its reasoning, the court commented to defense counsel, "[I]t seems you were expanding the petition to include any number of potential diagnoses," but the court denied the petition without ruling on whether defendant was eligible or suitable for mental health diversion based on any of his other diagnoses.

Rather than seek a ruling as to any of defendant's other diagnoses, defense counsel asked that the trial court's ruling be without prejudice to addressing defendant's alcoholism at a later time.  The trial court responded, "Well, you can file whatever you deem appropriate in the future."

*D.    Subsequent Proceedings*

At the conclusion of the mental health diversion hearing, defendant's case was set for trial on November 15, 2021.  The trial date was then continued three more times due to complications caused by the COVID-19 pandemic.  On January 25, 2022, four months after the mental health diversion hearing, defendant pled no contest to two of the charged offenses.  Defense counsel did not file another mental health diversion petition.

The trial court sentenced defendant to six years in prison.  The court struck one of defendant's prior serious felony convictions in the interests of justice because the conviction was old and in light of defendant's mental health issues.  Defendant timely appealed from the judgment, and the trial court granted a certificate of probable cause to challenge the denial of defendant's mental health diversion petition.

DISCUSSION

I

*Denial of Defendant's Petition for Mental Health Diversion*

Defendant first argues the trial court's denial of mental health diversion based on defendant's alcoholism was unsupported by substantial evidence. The People respond that the trial court did not and was not required to make a ruling with respect to alcoholism because defendant did not properly raise alcoholism in his petition. We conclude defendant's petition provided sufficient notice that he was seeking mental health diversion in part for his alcoholism. But when the trial court declined to rule on defendant's eligibility based on alcoholism, defense counsel indicated a preference to file a subsequent petition rather than seek a ruling at the hearing. We cannot conclude the trial court abused its discretion in acceding to counsel's indicated preference.

A.     *Sufficient Notice*

We first address the People's argument that defendant provided insufficient notice to the prosecution that he was seeking mental health diversion in part based on his alcoholism. We disagree.

As the People concede, section 1001.36 does not set forth specific pleading requirements and permits an informal showing of eligibility and suitability for mental health diversion. (§ 1001.36, former subd. (b)(3).) Defendant's petition stated: (1) he was a recovering alcoholic; (2) he had multiple DSM-5 diagnoses; (3) his alleged conduct was caused in part by alcohol use; (4) Thompson's opinion that alcohol was a factor in defendant's conduct; and (5) defendant needed assessment and treatment for his alcoholism. In the materials submitted with defendant's petition, both expert witnesses identified defendant's serious problems with alcohol, including a history of delirium tremens and a family history of alcoholism. Dr. Lofthouse specifically diagnosed defendant with alcoholism the day after the incident. This is more than sufficient to meet the informal standard of section 1001.36.

8

The People's argument also is belied by the prosecution questioning the experts at the hearing about defendant's alcoholism and arguing to the trial court that defendant's alleged offenses were due to alcohol use and not schizophrenia. Any lack of opposition to defendant's eligibility based on alcoholism appears to be due instead to the prosecution's mistaken assumption that alcoholism is not a qualifying mental disorder. The prosecution was mistaken because any mental disorder "identified in the most recent edition of the [DSM-5]," with exclusions not relevant here, qualifies for mental health diversion. (§ 1001.36, subd. (b)(1).) As Dr. Lofthouse testified, alcoholism is one such mental disorder. The prosecution attached an excerpt from the DSM-5 to its opposition to defendant's petition, so it obviously had the capability to make this determination prior to the hearing. The prosecution also had the ability to question the expert witnesses during the two months between the filing of the petition and the hearing.

In these circumstances, we see no basis for concluding the prosecution lacked proper notice that defendant was seeking diversion based in part on his alcoholism.

### B. Trial Court's Ruling

Nevertheless, the trial court did not rule on whether defendant's alcoholism made him eligible for diversion. The trial court explained to defense counsel that it understood schizophrenia to be the basis for defendant's petition. It then noted the experts and defense counsel had mentioned other mental disorders, but indicated it was only addressing schizophrenia.

At that point, defendant's attorney had the opportunity to seek a ruling with respect to alcoholism. Instead, counsel stated: "Your Honor, I hope that the denial is without prejudice. I do believe we made connection in the petition itself and I would like the opportunity to draw the symptoms—I think it is both that the use of alcohol explained by both Dr. Lofthouse and Mr. Thompson laid out in the petition is laid out in the documents attached to the petition. [¶] So I would like to address that more particularly for the Court perhaps at a later time."

9

We cannot conclude the trial court abused its discretion by not granting diversion for alcoholism when defense counsel expressly declined to ask the trial court to do so. "Since the trial court was not asked to exercise its discretion in this manner, it could not have abused its discretion as defendant claims." (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 128; accord, *Agricultural Labor Relations Bd. v. Laflin & Laflin* (1979) 89 Cal.App.3d 651, 666, fn. 16 ["It would be both inappropriate and futile for us to attempt to review for abuse a discretion the court was never requested to exercise and did not purport to exercise"]; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1149 ["[The defendant] did not ask the trial court to exercise that discretion, so it cannot now complain the court's decision was erroneous"].) This leads us to defendant's next argument, i.e., that defense counsel performed ineffectively by failing to seek a ruling as to whether he was eligible for mental health diversion based on his alcoholism.

## II

### *Ineffective Assistance of Counsel*

Defendant contends, "there was no tactical reason for [defense] counsel not timely notifying the court and prosecution that [defendant] sought diversion based on his . . . [alcoholism]" and there is a reasonable probability the trial court would have granted a petition based on alcoholism. The People contend defense counsel had a tactical reason for not seeking diversion based on alcoholism, and any ineffective assistance was not prejudicial because defendant was not suitable for mental health diversion, even if he was eligible. We agree with defendant.

### A.     *Reason for not Seeking Diversion for Alcoholism*

To establish the first prong of the test for constitutionally inadequate representation, a defendant must demonstrate counsel's representation "fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Samayoa* (1997) 15 Cal.4th 795, 845; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674, 693].) "The defendant may establish the first prong of an

10

ineffectiveness claim by showing there could be no satisfactory explanation for counsel's act or omission." (*People v. Peyton* (2009) 176 Cal.App.4th 642, 652.)

The People contend such a satisfactory explanation exists for defense counsel's failure to seek a ruling with respect to alcoholism. Specifically, defense counsel did not seek a ruling as to defendant's alcoholism because "rather than object, counsel asked the court to deny the petition without prejudice to provide appellant . . . with possible opportunity to file an additional petition without it being summarily denied as a repetitious filing." Had defense counsel filed a subsequent petition directed specifically towards defendant's alcoholism, we could consider her deferral at the hearing a tactical decision. But we see no tactical reason—nor do the People suggest one—for defense counsel to decline to seek a ruling at the hearing and then also decline to file the contemplated subsequent petition during the ensuing four months before defendant's plea. The transcripts from these hearings indicate the parties were not actively working towards resolution of the case during most of this time, nor did defendant bargain away his right to appeal the denial of mental health diversion. Given how favorable the evidence introduced at the hearing was for defendant, and how little work remained to be done to seek a ruling, we conclude counsel performed unreasonably by not filing the planned petition seeking diversion for alcoholism.

### B. Prejudice

The People contend that "even if the trial court had found that [defendant] was *eligible* for diversion based on [alcoholism], or other potential diagnoses, it is not reasonably probable that the court would have found appellant *suitable* for diversion." (Italics added.) The People offer three reasons: (1) the experts' opinions were based on incomplete information; (2) defendant had disciplinary issues while in jail; and (3) defendant's criminal history demonstrates he is unsuitable for diversion. We see no merit to these arguments.

11

To establish the second prong of the test for constitutionally inadequate representation, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Samayoa, supra*, 15 Cal.4th at p. 845; see *Strickland v. Washington, supra*, 466 U.S. at p. 694.) The People get this test backwards when they contend, "it is reasonably probable the trial court would have denied diversion." Rather, we must determine whether there is a reasonable probability the trial court would have *granted* mental health diversion had counsel sought diversion for alcoholism. "A 'reasonable probability' is not a showing that 'counsel's conduct more likely than not altered the outcome in the case,' but simply 'a probability sufficient to undermine confidence in the outcome.' " (*In re Cordero* (1988) 46 Cal.3d 161, 180.)

To grant mental health diversion, the trial court must determine the defendant is both eligible and suitable for diversion. (§ 1001.36, former subd. (b)(3); see also § 1001.36, subds. (b)-(c) [explicitly splitting the criteria into eligibility and suitability criteria].)

### 1. Eligibility

Section 1001.36, former subdivision (b)(1) contains two eligibility requirements: (A) the defendant must have been diagnosed with a qualifying mental disorder, and (B) the defendant's mental disorder must have been "a significant factor in the commission of the charged offense." (§ 1001.36, former subd. (b)(1)(A)-(B).)

As we have noted, alcoholism is a qualifying mental disorder. The People's argument that the expert's diagnoses were based on incomplete information fails to cast any serious doubt on the expert's testimony, and, in any event, is inconsistent with the statute, which permits experts to rely on any of a variety of types of relevant evidence when making a diagnosis. (§ 1001.36, former subd. (b)(1)(A).)

As we have also noted, the prosecution argued defendant's commission of the charged offense was due to his alcohol intoxication, not his schizophrenia, and

12

highlighted his history of alcoholism and delirium tremens. It seems unlikely the trial court would disagree with both parties and both experts and conclude alcoholism was not a significant factor in defendant's conduct. Accordingly, we conclude there is a reasonable probability the trial court would find defendant meets these eligibility criteria for diversion for alcoholism.

### 2. *Suitability*

An eligible defendant must also meet four criteria that demonstrate "that the defendant and the offense are suitable for diversion" (§ 1001.36, former subd. (b)(3)): (1) the "symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment"; (2) the defendant consents to diversion and waives the right to a speedy trial; (3) the defendant agrees to comply with treatment as a condition of diversion; and (4) "[t]he defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c).) The People's arguments essentially challenge the first and last of these criteria.

Regarding defendant's symptoms responding to treatment, both experts testified that treatment would resolve the symptoms that led to the incident for which defendant was charged. Defendant had already responded well once he became more involved in therapeutic counseling, "monitoring and maintaining himself in a much more appropriate way," which had prevented any further disciplinary incidents in the jail. The People contradict both experts and assert that defendant's history demonstrates that his symptoms do not respond to treatment. We see no evidence in the record to support the People's position.

Specifically, the People argue that: (1) years earlier, defendant was ordered to engage in mental health services as a term of probation, yet he went on to commit further crimes; (2) defendant was receiving psychiatric care in jail yet continued to engage in assaultive behavior; and (3) defendant refused his medication once, early in his jail stay.

13

Because the evidence from the diversion hearing fails to support the People's position, their argument fails to eliminate a reasonable probability the trial court would have granted diversion for alcoholism.

First, the prosecution was unable to substantiate whether defendant had previously undergone any specific mental health treatment prior to the incident other than a brief stay in a state hospital in 1989, where defendant was diagnosed with schizophrenia. When attempting to question the experts about defendant's history, the prosecution could only speak in hypotheticals without evidence about whether defendant had participated in any specific programs or what the conditions of those programs were. The experts, accordingly, refused to agree with the prosecution's position that defendant was not amenable to treatment. To the contrary, Thompson testified that defendant had already responded to treatment in jail once he became more involved in therapeutic counseling, "monitoring and maintaining himself in a much more appropriate way," which had prevented any further disciplinary incidents in the jail. That improvement was despite the clinicians seeing defendant on an irregular schedule due to their heavy patient loads and jail staff apparently giving defendant different medication from those initially prescribed. Simply put, all the evidence adduced at the hearing supports defendant's symptoms responding to treatment, while the People's position is based on hypotheticals and supposition.

Regarding defendant posing "an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community," the People again rely on defendant's criminal history and disciplinary record while in jail. Section 1170.18 "defines 'unreasonable risk of danger to public safety' as 'an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667.' (§ 1170.18, subd. (c).) The violent felonies encompassed in this definition 'are known as "super strikes" and include murder, attempted murder, solicitation to commit murder, assault with a

14

machine gun on a police officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by death or life imprisonment.' [Citation.] They also include sexually violent offenses and sexual offenses committed against minors under the age of 14. (See § 667, subd. (e)(2)(C)(iv).)" (*People v. Moine* (2021) 62 Cal.App.5th 440, 449-450.)

We agree with defense counsel, who argued at the diversion hearing that "[t]he People have not put on any evidence that [defendant] is likely to cause or participate in super strike behavior which is the level of dangerousness that the statute requests the Court to consider." Defendant's prior felony convictions were for making criminal threats in 1992 and 2015. These convictions do not rise to the level of "an unreasonable risk of danger to public safety, as defined in Section 1170.18." Nor does defendant's history of mostly minor crimes over 30 years foreclose a reasonable probability that the trial court would find defendant does not pose an unreasonable risk of committing a "super strike" offense, especially given that the court struck the 1992 conviction at sentencing in part because of defendant's mental health issues.

We conclude the evidence introduced at the diversion hearing creates a reasonable probability that the trial court would have granted defendant mental health diversion based on his alcoholism had defense counsel asked the trial court to do so. With both prongs of the test established, we conclude defense counsel provided ineffective assistance, so we will conditionally reverse the judgment.

## DISPOSITION

The judgment is conditionally reversed, and the matter is remanded for the trial court to allow defendant, if he chooses, to withdraw his plea and seek pretrial mental health diversion.  If defendant does not move to withdraw his plea within 30 days, or if the trial court again determines defendant should not be granted diversion, the trial court shall reinstate the judgment.[2]


\s\ ,
Krause, J.


We concur:


\s\ ,
Renner, Acting P. J.


\s\ ,
Boulware Eurie, J.

---

[2]     In light of the reversal due to ineffective assistance of counsel, the clerk of this court is directed to give the required notice and a copy of this opinion to the State Bar of California and to trial counsel.  (Bus. & Prof. Code, § 6086.7, subd. (a)(2); Cal. Rules of Court, rule 10.1017.)